## J. C. RUSHING v. F. W. CHANDLER ET AL.

### (No. 56.)

TRESPASS TO TRY TITLE — POSSESSION BY TENANT AND SUIT AGAINST SAME.— As possession by tenant is effective in securing the bar, suit against the tenant will suspend the running of the statute.

OCCUPANCY — TEMPORARY ABSENCE OF TENANT DOES NOT STOP RUNNING OF STATUTE.— It is a well-recognized doctrine that the fact of the premises being left without an occupant for a short time, between the removal of one tenant and the entry of his successor, where there is no intention of abandoning the possession, does not stop the running of the statute.

APPEAL from Ellis county.   Opinion by WATTS, J.

STATEMENT.— The appellees, F. W. Chandler and B. R. Townsend, as executors, and Angelina Townsend as executrix, of the last will and testament of Nathaniel Townsend, deceased, brought this suit of trespass to try title against appellant, J. C. Rushing, December 9, 1868, to recover the

three hundred and seventy-six acres of land described in the pleadings, and at the same time applied for and obtained a writ of injunction, which was afterwards dissolved and need not further be noticed. The appellant answered February 26, 1869, claiming the land and setting up the three, five and ten years' limitation. Appellees filed an amended petition May 30, 1870, claiming that for a long time prior, and at the time of the institution of this suit, they were seized and possessed of all of the said land except one hundred and sixty acres, which appellant claimed as a homestead; that appellant, after the institution of the suit, had entered upon and ejected them, etc.

May 3, 1871, appellant filed an amended answer, pleading general denial, not guilty, the three, five and ten years' limitation, setting out his title, and specifically his occupancy and the occupancy of those under whom he claims.

May 7, 1872, appellants filed a replication to appellees' answer, setting up limitation in substance as follows (except the field-notes, which are not copied), to wit: "Said defendant and the person under whom he claims have not had peaceable possession of the land claimed by him in his answer; for that they say that on, to wit, the 29th day of August, 1851, one B. F. Wright instituted suit in the district court of Ellis county, Texas, against Lewis Godard, the husband of Jane Godard, and the head of the family, for the recovery of the possession and for title to one thousand acres of land, embracing the land claimed by the defendant, and that afterwards on, to wit, the 26th day of April, 1854, judgment was rendered in said case in favor of plaintiff against the administrator of said Lewis Godard, deceased, et al., for the recovery of said one thousand acres, described as follows: . . .

"And it was ordered that a writ of possession issue, commanding the sheriff of Ellis county to deliver the possession of said land to said plaintiff; and your petitioners charge that afterwards on, to wit, the —— day of ——, 1856, the estate of Lewis Godard, deceased, as well as Jane Godard, the wife of said Lewis Godard, was actually dispossessed

of said land, which embraced almost the entire tract claimed now by defendant, and they were so dispossessed down to the date of purchase by defendant; and your petitioners further state that the statutes of limitation, by the constitution of this state, were suspended from the 28th day of January, 1861, until the 30th day of March, 1870."

On the same day appellant filed special exceptions to the replication of appellees, and by amendment corrected the description of the three hundred and seventy-six acres of land claimed by him.

The cause was called for trial the same day and the special exceptions of appellants to the appellees' replication were sustained by the court and an order was entered to that effect; appellees excepted to the order, gave notice of appeal and carried the same to the supreme court, where jurisdiction was entertained, and September 15, 1873, the order or judgment was reversed and the cause remanded. 58 Tex., 591.

Without any change in the pleadings the same was tried before a jury October 1, 1874, and the trial resulted in a verdict and judgment for the appellees and against appellant for the three hundred and seventy-six acres of land and costs of suit. Appellant filed a motion for a new trial, which was overruled, etc., and the case is before the court on appeal.

The third assignment of error alone can be considered under the statute, and that is as follows:

3. "The court erred in overruling the defendant's motion for new trial."

Appellees derive title as follows: Grant from Coahuila and Texas to Nathaniel Townsend, as assignee of Rafael de Pena, dated October 2, 1834, for eleven leagues. It was admitted that Townsend was dead and that appellees were his executors.

Appellant derived title as follows:

1. Patent to Francis Slaughter, assignee of Edward Farris, dated February 10, 1846.

2. Deed from Hill, executor of Slaughter, to Lucy Farris

to the northeast half of the Slaughter league, dated September 2, 1848.

3. Deed from Lucy Farris to Lewis Godard for same half of the league, dated October 17, 1848.

4. Deed by Godard to John Baker for six hundred and seventy-two acres out of the half league, dated September 25, 1849, and filed for record December 23, 1849.

5. Deed by Baker to Jane Godard, wife of Lewis Godard, for same six hundred and seventy-two acres, dated March 21, 1852, and recorded October 22, 1852. This was a deed of gift.

6. Deed from Jane Wilson (formerly Godard), joined by her then husband, J. R. Wilson, to J. C. Rushing, for three hundred and seventy-six acres, north part of the six hundred and seventy-two acres, dated February 9, 1865, recorded March 18, 1865.

OPINION.—The third assignment raises the question as to the sufficiency of the evidence to sustain the verdict and judgment; and also asserts that the verdict and judgment are against the evidence. The other errors sought to be assigned are so general and indefinite that they must be considered as waived. P. D., art. 1591.

The evidence as disclosed by the record clearly and unmistakably shows that appellees have the older and superior title, and that the land claimed by appellant is embraced in their survey. Under the clear and exhaustive charge of the court, the real question presented to the jury was that of the ten years' limitation. The evidence shows that Godard and his wife settled upon the land in the fall of 1848, claiming under the deed from Lucy Farris; that they continued their occupancy under said deed until September 25, 1849, when Godard conveyed the same to John Baker; that they still continued to occupy the land until March 21, 1852, when Baker conveyed, by deed of gift, to Mrs. Godard. About that date Godard started to California and died on the way. Mrs. Godard continued to occupy that

portion of the land claimed by appellant, in person and by tenants, until about 1856 or 1857, at which time the sheriff of Ellis county dispossessed her of all the land claimed by appellant, except about one hundred and twenty acres, which embraced her dwelling-house and part of her field, by putting Wright in the possession of the same, by virtue of a writ of possession issued under the judgment in the said case of Wright v. Godard; and that she continued to occupy and cultivate said one hundred and twenty acres by tenants until the close of the war in 1865. The evidence shows satisfactorily that this possession and occupancy of the land was adverse, notorious and continuous, and, so far as the one hundred and twenty acres is concerned, peaceable and uninterrupted; and that the occupancy and possession was under a claim of right, and adverse to the title of appellees. There is no evidence in the record that tends to meet and overcome the case made by appellant upon the issue of ten years' limitation.

Mrs. Godard's occupancy and possession by her tenants was as effective in constituting the bar as if she had, in person, remained upon the land. Texas Land Co. v. Williams, 51 Tex., 62; Cochran v. Farris, 18 Tex., 856; Whitehead v. Foley, 28 Tex., 14.

It might be reasonably inferred that in removal of one tenant and the coming in of another short intervals of time may have occurred when the premises were not occupied. But if such intervals were even shown by the testimony, this would not suspend the statute, as it very fully appears that the possession was not abandoned in contemplation of law. The intent to hold this land and continue the occupancy appears from the record. In fact Mrs. Godard was acting under the advice of counsel, and with a view of quieting and perfecting her title to the land by limitation. As said by Chief Justice Moore in Whitehead v. Foley, *supra:* "It is a well recognized doctrine in this court that the fact that the premises being left without an occupant for a short time between the removal of one tenant and the

entry of his successor, where there is no intention of abandoning the possession, does not stop the running of the statute. A short and temporary vacation of the premises is the ordinary and frequently the unavoidable incident of the change of tenants." See, also, Elliott v. Mitchell, 47 Tex., 445.

The uncontradicted testimony of the Blocks and Dillon is, that either Mrs. Godard or some one of her tenants was on the land claiming for her all the time until she conveyed to the appellant.

Her intention to hold and occupy the land adversely, as against and to the exclusion of all other claimants, is apparent upon all occasions.

We conclude that the verdict of the jury and judgment of the court, so far as concerns the one hundred and twenty acres not included in the Wright claim, is not supported by but is against the evidence.

The suit of Wright v. Godard was brought nearly twelve months after Godard had conveyed the land to Baker, and it is urged that as neither Baker nor Mrs. Godard were parties to that suit, the appellant is in no way bound by the judgment. Baker was the owner of the land at the time Wright sued Godard, and pending that suit he conveyed the land as a gift to Mrs. Godard, which made it her separate property. Neither Baker nor Mrs. Godard were bound by that judgment, so far as the same determined the invalidity of the deed from Lucy Farris to Godard, etc. But as Godard was the tenant of Baker at the time the suit was instituted, the possession of the latter was interrupted to that portion of the land involved in this suit, and the running of the statute to that extent was suspended. For, certainly, as possession by tenant is effective in securing the bar, suit against the tenant will suspend the running of the statute.

In our opinion the suit against Godard suspended the statute to the extent of the land involved in the litigation.

The court charged the jury that the deed from Lucy

Farris to Godard, considered merely as her own act without the consent or authority of her husband, would not confer title nor sustain the plea of three years' limitation. The only evidence in the record, outside of the record of the suit of Wright *v.* Godard, and that was not admissible for that purpose, tending in the slightest degree to show that Lucy Farris was a married woman at the time of the conveyance to Godard, is found in the certificate of the officer taking her acknowledgment thereto. His statement that Lucy Farris, wife of "Edward," appeared before him, is not *prima facie* evidence in this case that she was then a married woman. And it may be admitted that this part of the court's charge was not authorized by the testimony, but in view of the fact that the suit of Wright against Godard interrupted the running of the statute in favor of Baker, it was an immaterial error working no injury to appellant.

If, as intimated in Thomas *v.* Chance, 11 Tex., 638, where this identical deed was under consideration, Edward Farris, the husband of Lucy, assented to and authorized the execution of the deed by her, then it might constitute such title as would support the three years' limitation, as against the husband or his subsequent vendors; but we are not called upon to decide that point. But as to whether the husband did or not authorize and consent to the execution of the deed, or whether said Lucy was or not a married woman at the time of its execution, depends upon the evidence, and with reference thereto the record, in these particulars, is silent.

REVERSED AND REMANDED.